IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

SHARON A. MACK                 PLAINTIFF

vs.           Civil No. 04-6120

JO ANNE B. BARNHART,
Commissioner, Social Security Administration        DEFENDANT

## MEMORANDUM OPINION

### Factual and Procedural Background:

   Sharon A. Mack (hereinafter "Plaintiff"), has appealed the final decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner"), denying her claims for a period of disability and disability insurance benefits (hereinafter "DIB"), pursuant to *§§ 216(i) and 223* of Title II of the Social Security Act (hereinafter "the Act"), *42 U.S.C. §§ 416(i) and 423*, and for supplemental security income (hereinafter "SSI") benefits, pursuant to *§ 1602* of Title XVI*, 42 U.S.C. § 1381a*. In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *42 U.S.C. § 405(g)*.

   The parties have each filed appeal briefs (Doc. #9 & 10). The history of the administrative proceedings is contained in the respective briefs and will not be recited herein, except as is necessary.

   The DIB & SSI applications now before the undersigned were protectively filed on March 17, 2000 (T. 48-50, 82, 11). Said applications allege an onset date of July 25, 1997. Plaintiff alleges that she is disabled due to: depression; carpal tunnel syndrome; history of elbow surgery; memory loss; chronic diarrhea; numbness; and, fibromyalgia. The issue before

**AO72A**
**(Rev. 8/82)**

this Court is whether the decision of the Commissioner is supported by substantial record evidence.

The administrative hearing was conducted on August 14, 2001 (T. 296-321), after which the ALJ rendered an adverse decision on October 24, 2001 (T. 11-18).

Plaintiff then requested review of the ALJ's decision by the Appeals Council (T. 7). Plaintiff did not submit any additional evidence or exhibits to the Appeals Council. On July 23, 2004, the Appeals Council denied Plaintiff's request for review (T. 4-6), thereby making the decision of the ALJ the final decision of the Commissioner. From that decision, Plaintiff appeals (Doc. #1, 9). This matter is before the undersigned by consent of the parties (Doc. #4).

**Applicable Law:**

Our role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000); see also Craig v. Apfel 212 F.3d 433, 435-436 (8th Cir. 2000).* Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion. *See Haggard v. Apfel, 175 F.3d 591, 594 (8th Cir. 1999).* In considering whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. *See Prosch, 201 F.3d at 1012.* We may not reverse the Commissioner's decision merely because substantial evidence exists in the record that would have supported a contrary outcome. *See id.*

In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it; the Court may not, however, reverse the Commissioner's decision merely because substantial evidence would

-2-

have supported an opposite decision. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993). Even if this Court might have weighed the evidence differently, the decision of the ALJ may not be reversed if there is enough evidence in the record to support the decision. *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992). It is well settled that proof of a disabling impairment must be supported by at least some objective medical evidence. *Marolf v. Sullivan*, 981 F.2d 976, 978 (8th Cir. 1992).

The Commissioner has established, by regulation, a five-step sequential evaluation for determining whether an individual is disabled.

The first step involves a determination of whether the claimant is involved in substantial gainful activity. *20 C.F.R. § 416.920(b)*. If the claimant is so involved, benefits are denied; if not, the evaluation goes to the next step.

Step two involves a determination, based solely on the medical evidence, of whether claimant has a severe impairment or combination of impairments. *Id., § 416.920(c); see 20 C.F.R. § 416.926*. If not, benefits are denied; if so, the evaluation proceeds to the next step.

The third step involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id., § 416.920(d)*. If so, benefits are awarded; if not, the evaluation continues.

Step four involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform past work. *Id., § 416.920(e)*. If so, benefits are denied; if not, the evaluation continues.

The fifth step involves a determination of whether the claimant is able to perform other substantial and gainful work within the economy, given the claimant's age, education and work

experience. *Id., § 404.920(f)*. If so, benefits are denied; if not, benefits are awarded.

In addition, whenever adult claimants allege mental impairment, the application of a special technique must be followed at each level of the administrative review process. See *20 C.F.R. § 416.920a(a)*.

The Commissioner is then charged with rating the degree of functional limitation, and applying the technique to evaluate mental impairments. See *20 C.F.R. § 416.920a(d)*. Application of the technique must be documented by the Commissioner at the ALJ hearing and Appeals Council levels. See *20 C.F.R. § 416.920a(e)*.

**Discussion:**

Plaintiff has the burden of proving her disability. E.g., *Sykes v. Bowen, 854 F.2d 284, 285 (8th Cir. 1988)*. Thus, she bore the responsibility of presenting the strongest case possible. *Thomas v. Sullivan, 928 F.2d 255, 260 (8th Cir. 1991)*. Despite the Plaintiff's burden, there is little support in the record for Plaintiff's claim of disability. It is well settled that proof of a disabling impairment must be supported by at least some objective medical evidence. *Marolf v. Sullivan, 981 F.2d 976, 978 (8th Cir. 1992)*.

On appeal, Plaintiff argues that the ALJ committed the following errors: rendered a decision not supported by substantial evidence; failed to evaluate Plaintiff's impairments using the listings; failed to assess Plaintiff's nonexertional limitations; failed to discuss Plaintiff's mental health impairment; failed to complete a Psychiatric Review Technique Form; and, failed to call a vocational expert (hereinafter "VE") to testify at the hearing (Doc. #9, p. 2). To prove disability, plaintiff had to establish a physical or mental impairment by medical evidence consisting of signs, symptoms and laboratory findings, rather than by only her own statements

of her symptoms.  See *20 C.F.R. § 404.1508*.

For purposes of Plaintiff's SSI application, the relevant time period begins with the date the application was protectively filed, March 17, 2000, and ends with the date of the ALJ's decision, October 24, 2001 (T. 48-50, 82, 11-18).  Plaintiff previously filed an application for DIB benefits.  Said application was denied and Plaintiff failed to appeal the denial of her first application.  Therefore, for purposes of Plaintiff's pending application for DIB benefits, the relevant time period begins with the date following the denial of her previous application, April 5, 2000 (T. 62), and ends with the date of the ALJ's decision, October 24, 2001 (48-50, 11-18). In order to establish that she suffers from a disability which makes her eligible for benefits, Plaintiff must prove that she was disabled within the time frame of the respective relevant time periods for each application.

Here, the record does not establish evidence of disability, as defined by the Act, during the relevant time periods.  Nor does the record establish that Plaintiff suffered from a disability prior to or after the relevant time periods.  Although evidence of a disability subsequent [or prior] to the relevant time period can be relevant in helping to elucidate a medical condition during the time for which benefits might be awarded, such is not the case in the instant action. *Pyland v. Apfel, 149 F.3d 873, 877 (8th Cir. 1998), citing Fowler v. Bowen, 866 F.2d 249, 252 (8th Cir. 1989);  Martonik v. Heckler, 773 F.2d 236, 240-41 (8th Cir. 1985); and, Social Security Act, §§ 216(i), 223(c), as amended, 42 U.S.C.A. §§ 416(i), 423(c)*.  This is not a case wherein there exists a retrospective diagnosis or elucidation of a previous medical condition within the medical documentation from the relevant time period.  Retrospective or previous medical diagnoses are relevant evidence of disability existing before the close of the relevant

time period; however, when the specific dates encompassing the relevant time period are critical, retrospective or previous medical opinions alone will not usually suffice unless such evidence is corroborated, as by subjective evidence from lay observers such as family members. *Social Security Act, §§ 216(i)(3), 223(c)(1), as amended, 42 U.S.C.A. §§ 416(i)(3), 423(c)(1); Jones v. Chater, 65 F.3d 102 (8th Cir. 1995)*. Plaintiff did not produce any such testimony from witnesses at hearing (T. 296-321).

During the administrative hearing, Plaintiff testified that she worked as a certified nurses aide at two different nursing homes during the relevant time periods. The record reflects that prior to her alleged onset date, Plaintiff worked for 10 years in a poultry processing plant (T. 301). However, at hearing Plaintiff testified that she obtained CNA training/certification in 1997, after her alleged onset date. Plaintiff then worked as a CNA in two nursing homes (T. 11-18, 300-304). She testified that she worked at the Dierks Nursing Center and Pleasant Manor Nursing in 1998. She also testified that she worked as a home health aide for the Pike County Home Health Services Unit from September of 1999 through June of 2000 (T. 300). By Plaintiff's own admission, her duties as a home health aide included caring for patients, cooking, doing house work and running errands (T. 300). Yet, she described her activities of daily living as being severely restricted.

Plaintiff received mental health treatment at the Southwest Arkansas Counseling and Mental Health Center, Inc., from July 31, 1996 through September 28, 2000 (T. 149-200). During her treatment, Plaintiff often reported to her mental health providers that she was either looking for a job or employed. Specifically, Plaintiff reported that she was either looking for employment or employed from September 1997 through March of 1998 (T. 183, 184, 186, 187,

188, 189). Plaintiff also reported to her therapist that she engaged in the CNA training program and subsequently, obtained her CNA certification (T. 188).

Plaintiff was hospitalized only once during the relevant time period. This hospitalization occurred on June 10, 2000, when Plaintiff took an overdose of prescription medication. Plaintiff ingested four 50 mg Amitriptyline[1] [2] tablets and one Tylenol #3[3] tablet (T. 108). Plaintiff took the overdose only 30 minutes prior to her arrival at the emergency room. After taking the overdose, Plaintiff immediately called the emergency hotline assistance number (T. 116). Plaintiff was transferred from the Pike County Hospital Emergency Room to the Levi Hospital Psychiatric Services Unit, where she remained as a patient for four days (T. 116-117). Upon discharge to her home, Plaintiff was referred to Community Counseling Services for followup care. While at Levi Hospital, it was noted that this hospitalization was the Plaintiff's first contact with a psychiatrist[4] (T. 119). Plaintiff's discharge diagnosis was "major depression, single episode, mild to moderate in partial remission" (T. 118). Plaintiff was given Klonpin 1mg twice daily with "significant resolution of her depression, anxiety and suicidality" (T. 117).

---

[1] Amitriptyline is a tricylic antidepressant used to relieve the symptoms of depression. It may take up to four weeks before the patient starts to feel better. *http://www.drugs.com/amitriptyline.html*

[2] Here, the Plaintiff ingested 200 mgs of Amitriptyline. Amitriptyline is manufactured in dosages of 25, 50, 100 and 150 milligrams. *http://my.webmd.com/drugs/drug-8611-Amitriptyline+Oral.aspx?drugid=8611&drugname=Amitriptyline+Oral&pagenumber=2*

[3] Tylenol #3 is a tablet which consists of 300 mgs of acetaminophen and 30 mgs of codeine phosphate. Tylenol #3 is indicated for treatment of mild to moderate pain. *Physicians Desk Reference*, p. 2490 (58th Edition 2004).

[4] This notation is inconsistent with the evidence of Plaintiff's mental health treatment records.

AO72A
(Rev. 8/82)

Of note, Dr. Phillip White, Plaintiff's treating physician, again prescribed Tylenol #3 and Amytriptyline 50 mg for Plaintiff on August 23, 2000, just two months after her overdose. However, the record also reflects that Plaintiff obtained Tylenol #3 at the emergency room and from other physicians on other occasions (T. 105). The record also reflects that on June 8, 2000, Plaintiff presented to Dr. Oladele Adebogun, a staff psychiatrist with Southwest Arkansas Counseling and Mental Health Center, Inc. This medication check occurred just two days before Plaintiff's medication overdose. Dr. Adebogun's note states:

> Sharon has a history of Mental Depressive Disorder, Personality Disorder NOS and R/O Dysthymia. She also has multiple physical problems including chronic pain. She is continuing Amitriptyline at 50 mg PO qhs with out any side effects. Anxiety and depressive symptoms are in remission. She denies suicide and homicide ideation. She is using her medicines as prescribed, also benefitting restful sleep at night. Sharon will return to follow up with me in four months.

(T.152).

The ALJ found that Plaintiff suffered from fibromyalgia, depression, colitis, gastroesophageal reflux disease and history of carpal tunnel syndrome and left elbow surgery. He determined that when these impairments are considered in combination with one another, the combination of said impairments yields a severe impairment (T. 14). After conducting a lengthy psychiatric review technique within the body of the decision, the ALJ determined that although Plaintiff suffers from severe depression, her depression does not meet the criteria for a listed impairment (T. 14-15). In fact, the ALJ determined that Plaintiff's mental impairments are controlled with medication. The ALJ properly relied on Plaintiff's psychiatric treatment notes which regularly reflect that Plaintiff is doing well and improving throughout her treatment (T. 15, 149-200, 266-268). If an impairment can be controlled by treatment or medication, it

AO72A
(Rev. 8/82)

cannot be considered disabling. *Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995); Stout v. Shalala, 988 F.2d 85853, 855 (8th Cir. 1993)*. Here, the combination of counseling and antidepressant medication were controlling Plaintiff's depression prior to her alleged onset, after her alleged onset and after her overdose of medication. There is no 12 month period of time when Plaintiff's counseling and medication were not controlling her depression.

Plaintiff also alleged that the ALJ erred in evaluating her credibility and nonexertional impairments (Doc. #9). In determining whether the ALJ properly disregarded Plaintiff's subjective complaints of pain, the Court must determine if the ALJ properly followed the requirements of *Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)* (subsequent history omitted), in evaluating her pain and credibility.

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. the claimant's daily activities;
> 2. the duration, frequency and intensity of the pain;
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints <u>solely</u> on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Polaski v. Heckler, 739 F.2d at 1322 (emphasis in original)*.

However, in addition to the requirement that the ALJ consider the Plaintiff's allegations of pain, he also has a statutory duty to assess the credibility of plaintiff and other witnesses.

AO72A
(Rev. 8/82)

*Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992). The ALJ may discredit subjective complaints of pain inconsistent with the record as a whole. *Ownbey v. Shalala*, 5 F.3d 342, 344 (8th Cir. 1993).

The ALJ devoted a significant portion of his opinion to conducting the proper Polaski analysis (T. 11-18). The ALJ not only discussed the medical evidence, he also discussed Plaintiff's alleged activities of daily living, functional restrictions and work history (T. 15-17). The testimony of Plaintiff's husband[5] was also considered by the ALJ in conducting the *Polaski* analysis and rendering a decision (T. 16). The ALJ properly noted that despite some of Plaintiff's very specific alleged impairments, she sought no medical treatment for those impairments. For example, Plaintiff alleged at hearing that she had: carpal tunnel syndrome; history of carpal tunnel release; extreme pain and numbness in her arms and hands; history of elbow surgery; nerve damage in her elbow; dizziness; and, hears voices. Yet, the record contains little or no evidence of diagnosis or treatment for any of these alleged impairments. What treatment Plaintiff received was conservative in nature. The need for no more than conservative treatment is inconsistent with allegations of disabling pain. *See Smith v. Shalala, F.2d 1371, 1374 (8th Cir. 1993); Robinson v. Sullivan* 956 F.2d 836, 840 (8th Cir. 1992).

No physician ever indicated how many tender points Plaintiff had which verified her history of diagnosis of fibromyalgia. She was never prescribed medication indicated for the treatment of moderate to severe pain, despite her allegations of disabling and debilitating pain.

---

[5]Plaintiff met her husband in February of 2001 (T. 318). They were married on June 16, 2001 (T. 292). Therefore, Plaintiff's husband had only known her for 8 months prior to the administrative hearing. Mr. Mack been married to Plaintiff for 4 months prior to the October 24, 2001, hearing.

AO72A
(Rev. 8/82)

She was never prescribed muscle relaxers despite her allegations of cramping and muscle spasms. Likewise, Plaintiff did not receive any trigger point injections as treatment for fibromyalgia or muscle spasms.

Although not considered past relevant work, the ALJ properly considered Plaintiff's employment as a home health aide or certified nurse's aide for substantial portions of the relevant period. Likewise, despite her allegations of severely restricted activities of daily living, Plaintiff met and married her husband during the relevant time period.

The ALJ properly evaluated Plaintiff's subjective complaints within his decision. He clearly considered and reviewed the *Polaski* factors as they apply to Plaintiff's case. Although Plaintiff's work did not rise to the level of past relevant work, she was nevertheless working. While there is no evidence that any of this work rose to the level of substantial gainful activity, the fact that Plaintiff cared for, cooked and ran errands for home health patients is a relevant consideration when assessing Plaintiff's credibility; this is especially true in light of Plaintiff's allegations of extremely restricted activities of daily living. Clearly, Plaintiff engages in a wide range of activities of daily living which are inconsistent with a moderate to severe level of pain. Likewise, none of Plaintiff's medications are indicative of severe pain.

Plaintiff's allegations that the decision of the ALJ was not supported by substantial evidence are not supported by the administrative record. Therefore, the decision of the ALJ must be affirmed.

**Conclusion:**

There is substantial record evidence to support the decision of the ALJ. Accordingly, the Commissioner's decision should be affirmed and the Plaintiff's complaint dismissed with

AO72A
(Rev. 8/82)

prejudice. A judgement incorporating these findings will be entered pursuant to F.R.C.P. 52 and 58.

ENTERED this 21st day of September, 2005.

/s/Bobby E. Shepherd
Honorable Bobby E. Shepherd
United States Magistrate Judge

AO72A
(Rev. 8/82)